Case 2:24-mj-00298-GMB   Document 1   Filed 05/15/24   Page 1 of 20

FILED
2024 May-15 AM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

Case 4:24-cr-00184 *SEALED*   Document 1   Filed on 04/09/24 in TXSD   Page 1 of 20

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
*April 09, 2024*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § | Criminal No.: **4:24-cr-00184** |
| (1) TERNION GROUP INTERNATIONAL, LLC, a/k/a TERNION TRAINING AND EDUCATION CENTER, INC. | § § § § | <u>UNDER SEAL</u> |
| (2) LENEL HOPKINS, | § § | |
| (3) ANTOINETTE MONIQUE HOPKINS, | § § | |
| (4) ALICHIA WEBSTER, | § § § § | MJ 324  298 |
| (6) NEIL JOHN HALVORSON; | § § | |
| and | § § | |
| (7) VICTOR EVANS, JR. | § § | |
| Defendants. | § § | |

<u>CRIMINAL INDICTMENT</u>

THE GRAND JURY CHARGES THAT:

**I.   INTRODUCTION**

At all times material to this indictment:

**A.   THE PARTIES**

**1.   The Defendants**

1.  Ternion Group International, LLC, also known as Ternion Training and Education Center, Inc. ("TERNION GLOBAL") was a self-identified "Christian" company that claimed at various times to be located at 2 North Twentieth Street, Suite #1120, Birmingham, Alabama

1

35203, 12941 North Freeway, #408, Houston, Texas 77060, and 12703 Veterans Memorial Drive, Suite # 110, Houston, Texas 77014, the latter of two of which are within the Southern District of Texas. Despite claiming to be located at 2 North Twentieth Street, Suite #1120, Birmingham, Alabama 35203, TERNION GLOBAL did not, in fact, occupy that location. TERNION GLOBAL claimed to be an international investment company performing construction projects and job training for Christian believers. Previously, on or about May 24, 2012, Ternion Group Holdings, LLC was organized in the State of Illinois with LENEL HOPKINS as its Agent and Manager. Ternion Group Holdings, LLC of the State of Illinois was involuntarily dissolved on or about November 13, 2015.

2. LENEL HOPKINS, a resident of the Southern District of Texas, was the founder and CEO of TERNION GLOBAL and the husband of ANTOINETTE MONIQUE HOPKINS.

3. ANTOINETTE MONIQUE HOPKINS, a resident of the Southern District of Texas, was the Special Counsel of TERNION GLOBAL, wife of LENEL HOPKINS, and operated the A.M. White Law Firm, PLLC. The A.M. White Law Firm, PLLC, had a principal place of business at 12703 Veterans Memorial Drive, Suite #110, Houston, Texas 77014 and accepted wire transfers on behalf of TERNION GLOBAL. The abovementioned address was not, in fact, occupied by ANTOINETTE MONIQUE HOPKINS, including as a law office.

4. ALICHIA WEBSTER was the Director of Housing and Real Estate Services for TERNION GLOBAL and was in a romantic relationship with VICTOR EVANS, JR.

6. NEIL JOHN HALVORSON was the Secretary, Office of General Counsel for TERNION GLOBAL.

7. VICTOR EVANS, JR., was the son of VICTOR EVANS, SR. and was in a romantic relationship with ALICHIA WEBSTER. Additionally, VICTOR EVANS, JR. was residing with, and had knowledge of the finances and assets of, VICTOR EVANS, SR.

### 2. The Victim

8. VICTOR EVANS, SR. is a World War II Veteran born in 1927 who resided at 6519 South Hamilton Avenue, Chicago, Illinois, 60636-2533.

9. TERNION OF ENGLEWOOD, LLC was a Limited Liability Company formed on or about May 18, 2016 for which VICTOR EVANS, SR. was the registered agent, organizer, and manager and for which the address was 6519 South Hamilton Avenue, Chicago, Illinois 60636-2533. The paperwork for starting the TERNION OF ENGLEWOOD, LLC was completed by VICTOR EVANS, JR. VICTOR EVANS, JR. was listed as the Project Manager of TERNION OF ENGLEWOOD, LLC and would draw a paycheck from, and have access to, the bank account for TERNION OF ENGLEWOOD, LLC. That bank account was opened with Marquette Bank and all of the funds contained therein were from the retirement accounts and personal savings and checking accounts of VICTOR EVANS, SR.

### 3. The Financial Institutions

10. Marquette Bank was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in Illinois. VICTOR EVANS, SR. had a personal account at Marquette Bank ending in 6387 and VICTOR EVANS, SR. and VICTOR EVANS, JR., had an account at Marquette Bank under the name TERNION OF ENGLEWOOD ending in 5576, which was opened on October 13, 2017.

11. Truist Bank/BB&T was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered

3

in North Carolina. TERNION GLOBAL had account at Truist Bank/BB&T ending in 4091 (NEIL JOHN HALVERSON and ANTOINETTE MONIQUE HOPKINS were authorized signors), and 3536 (ANTOINETTE MONIQUE HOPKINS was an authorized signor.)

12. Wells Fargo Bank was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in California. TERNION GLOBAL had an account at Wells Fargo Bank ending in 2836, which was opened initially by Heather Schooler, an employee of TERNION GLOBAL.

13. Bank of America was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in North Carolina. ANTOINETTE MONIQUE HOPKINS had an account at Bank of America under the name A.M. White Law Firm, PLLC, ending in 8878.

14. Loyal Trust Bank was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in Georgia. ANTOINETTE MONIQUE HOPKINS had accounts at Loyal Trust Bank under the name A.M. White Law Firm, PLLC, ending in 1598 and 1616.

15. JP Morgan Chase Bank was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in New York. ANTOINETTE MONIQUE HOPKINS had an account at JP Morgan Chase Bank ending in 5945.

16. BBVA Compass Bank was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in Alabama. TERNION GLOBAL had an account at BBVA Compass Bank ending in 4698 and NEAL JOHN HALVORSON had accounts at BBVA Compass Bank ending in 2783 and 2932.

4

17. Regions Bank was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in Alabama. LENEL and ANTOINETTE MONIQUE HOPKINS had an account at Regions Bank ending in 2499.

18. Prosperity Bank was a federally insured financial institution in that it was an insured depository institution of the Federal Deposit Insurance Corporation and was headquartered in Texas. Stephanie Boutte-Philipps, an employee of TERNION GLOBAL, had accounts at Prosperity Bank ending in 4281 and 1520.

19. Waddell & Reed Financial Advisors ("Waddell & Reed") are financial advisors with whom VICTOR EVANS, SR. had a Roth/IRA retirement account.

### B. MANNER AND MEANS

20. TERNION GLOBAL's members and associates, including the abovementioned Defendants, are engaged in a fraud scheme, which promises investors high monetary returns and ownership in local development projects in exchange for large investment deposits into TERNION GLOBAL via wire transfer and mail.

21. TERNION GLOBAL claimed that it provides investment opportunities by redeveloping economically depressed communities through infrastructure development and job creation.

22. TERNION GLOBAL told potential local investors that they would become "hubs" or business LLCs associated with TERNION GLOBAL. TERNION GLOBAL told potential investors that the hub should have a Ternion name and a physical location which is that of the investor's address. TERNION GLOBAL then required the investor to make monetary payments to TERNION GLOBAL, and, in return, the investor would receive a return on the investment in

the millions of dollars. In reality, the investor received nothing from TERNION GLOBAL in exchange for the monetary payments the investor made to TERNION GLOBAL.

### C. OVERT ACTS

#### 1. The Initial Pitch

23. From on or about April 27, 2016, through on or about April 15, 2019, TERNION GLOBAL, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., defrauded VICTOR EVANS, SR. of over $322,000.00.

24. Prior to the scheme, VICTOR EVANS, SR. had approximately $700,000.00 in a retirement plan administered by Waddell and Reed Financial Advisors.

25. Prior to April, 2016, VICTOR EVANS, JR., was put into contact with LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, and NEIL JOHN HALVORSON by ALICHIA WEBSTER to execute the scheme.

26. From on or about April, 1, 2016, to on or about September 1, 2016, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., informed VICTOR EVANS, SR., that if VICTOR EVANS, SR., invested $700,000.00 with TERNION GLOBAL, VICTOR EVANS, SR. would receive a $13,000,000.00 return on investment. LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., informed VICTOR EVANS, SR. that VICTOR EVANS, SR.'s money would be used to build a vocational school and to purchase 100 homes. Later, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., informed VICTOR

EVANS, SR. that the investment would be used to build a movie theater, then a strip mall, and then returned to the claim that it would be used for a vocational school. LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., informed VICTOR EVANS, SR. that the location of the project would be in the vicinity of West 59th Street and Western Avenue in Chicago, Illinois and that the City of Chicago was going to give the land to VICTOR EVANS, SR. for the investment opportunity. In reality, the location of the project was privately owned and the City of Chicago was not able and was not going to sell it. VICTOR EVANS, SR. refused to pay $700,000.00, and eventually, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., agreed to accept $300,000.00 from VICTOR EVANS, SR. and still promised a $13,000,000.00 return on his investment.

27. As part of the scheme, during the aforementioned time period, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, and VICTOR EVANS, JR., had a series of meetings with VICTOR EVANS, SR. including at VICTOR EVANS, SR.'s house in Chicago, Illinois, as well as a hotel in the vicinity of 67th Street and Cicero Avenue in Chicago, Illinois.

28. As part of the scheme, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, and VICTOR EVANS, JR., had VICTOR EVANS, SR. create TERNION OF ENGLEWOOD as a "hub" referred to in Paragraph 22.

### 2. The Will

29. VICTOR EVANS, SR. had a fully executed Last Will and Testament completed on September 22, 2011 and a Short Form Power of Attorney for Property completed on January 28,

7

2012. The will listed Karen E. Evans, his daughter, as his executor and the Short Form Power of Attorney for Property listed Karen E. Evans, his daughter, as his agent and VICTOR EVANS, JR. as his successor agent.

30. As part of the scheme, from on or about July 21, 2016, to on or about May 24, 2017, NEIL JOHN HALVORSON, and VICTOR EVANS, JR. caused VICTOR EVANS, SR., to enter into a Trust Agreement, Memorandum of Trust, Last Will and Testament, General Power of Attorney, Living Will, Short Form Power of Attorney for Property, and Power of Attorney form for 3 specific parcels of property. These documents placed VICTOR EVANS, JR. as the successor trustee over the property and estate of VICTOR EVANS, SR., gave VICTOR EVANS, JR. all of VICTOR EVANS, SR.'s interest in TERNION OF ENGLEWOOD, LLC, appointed VICTOR EVANS, JR., as VICTOR EVANS, SR.'s personal representative, and provided VICTOR EVANS, JR. with a General Power of Attorney for VICTOR EVANS, SR's bank accounts, property and contracts. During the preparation and filing of these documents, NEIL JOHN HALVORSON did not inform VICTOR EVANS, SR. about his (NEIL JOHN HALVORSON) position with and relationship to TERNION GLOBAL.

31. As part of the scheme, on or about May 24, 2017, NEIL JOHN HALVORSON, and VICTOR EVANS, JR. caused VICTOR EVANS, SR., to execute a new Last Will and Testament, which transferred all of VICTOR EVANS, SR.'s residuary estate (all real and personal property) to his trust. The will also listed VICTOR EVANS, JR. as the personal representative of VICTOR EVANS, SR.

32. As part of the scheme, on or about May 24, 2017, NEIL JOHN HALVORSON, and VICTOR EVANS, JR. caused VICTOR EVANS, SR., to execute General Power of Attorney forms for 6519 S. Hamilton, Chicago, Illinois 60636, 6505 S. Hamilton, Chicago, Illinois 60636,

and 19705 Lake Lynwood Drive, Chicago, Illinois. The Power of Attorney forms listed VICTOR EVANS, JR. as the agent in charge.

33. From on or about July 11, 2016, to on or about August 1, 2016, NEIL JOHN HALVORSON, and VICTOR EVANS, JR. caused VICTOR EVANS, SR. to issue checks totaling at least $2,742.59 from his Marquette Bank checking account ending in 6387. The purpose of these withdrawals was for the fraudulent formation of VICTOR EVANS, SR.'s last will and testament, which transferred ownership of property and trust to VICTOR EVANS, JR. upon VICTOR EVANS, SR.'s death. This included a check for $950.00 to NEAL JOHN HALVORSON and checks totaling $1,844.75 to the City of Chicago and Cook County Treasurer.

34. On or about September 5, 2017, VICTOR EVANS, JR. used his health care power of attorney to enter a Do-Not-Resuscitate Form with the State of Illinois on behalf VICTOR EVANS, SR. This medical agreement was entered without the consent of VICTOR EVANS, SR.

### 3. The Memorandum of Understanding ("MOU")

35. As part of this scheme, on or about March 20, 2019, Defendants, utilizing the name Ternion Training and Education Center, Inc., entered into a Memorandum of Understanding ("MOU") with VICTOR EVANS, SR. and VICTOR EVANS, JR. as TERNION OF ENGLEWOOD. Although this MOU was signed by VICTOR EVANS, SR., it was drafted by Defendants. VICTOR EVANS, JR. brought this MOU to VICTOR EVANS, SR. and told VICTOR EVANS, SR. to sign it, which VICTOR EVANS, SR. did without reading it and without having a lawyer present because he believed VICTOR EVANS, JR. knew how to run the business.

36. The MOU stated on one had that: (1) it was not a contract; (2) it does not constitute a formal undertaking; (3) it does not give rise to any rights or limitation of rights; and (4) it did not establish or create any form or manner of a formal agreement. However, the MOU also stated

9

that: (1) it was an agreement between TERNION GLOBAL and TERNION OF ENGLEWOOD and set out all necessary working arrangements; (2) it was the cornerstone and structure for any and all impending binding contracts; (3) its terms were valid for three years from the date of execution (March 20, 2019), at which point TERNION GLOBAL and TERNION OF ENGLEWOOD with execute the necessary documents; (4) it could only be amended or modified by written consent of both parties and can only be cancelled with 90 days advanced written notice; (5) it agreed to indemnify and hold harmless TERNION GLOBAL; (6) it stated that the parties agree to mediation and dispute resolution regarding disputes in the MOU; (7) it was governed by the laws of the State of Texas; (8) it was contingent upon TERNION OF ENGLEWOOD providing all funding and will cost TERNION OF ENGLEWOOD $700,000.00: (9) TERNION OF ENGLEWOOD and TERNION GLOBAL would develop, establish, and manage a state licensed vocations school in the Chicago Metropolitan Area under the TERNION GLOBAL brand; (10) TERNION GLOBAL will plan, setup and local the state license vocation school in the Chicago Metropolitan Area; (11) TERNION GLOBAL's ownership shall be 75% and TERNION OF ENGLEWOOD's ownership shall be 25%; and (12) TERNION GLOBAL will provide marketing support for student recruitment, at least 3 State approved programs, post graduate placement support; will be the managing partner, and will provide C-Level management to train all staff, develop programs, and execute business growth plans to benefit community workforce.

37. VICTOR EVANS, SR. has received no return on his investment and the only documentation of the relationship with Ternion in the aforementioned MOU.

#### 4. The Wire Transfers

38. On or about April 27, 2016, VICTOR EVANS, SR. wired from his personal Marquette Bank account ending in 6387 $20,000.00 to TERNION GLOBAL's Wells Fargo

account ending in 2836, which was opened initially by Heather Schooler, an employee of TERNION GLOBAL. This was the initial payment by VICTOR EVANS, SR. to TERNION GLOBAL, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., as part of the aforementioned scheme to defraud.

39. On or about July 20, 2017, VICTOR EVANS, JR. convinced VICTOR EVANS, SR., to withdraw $2,000.00 from his Marquette Bank checking account ending in 6387. The check was issued to VICTOR EVANS, JR. — not to a business or a business account.

40. On or about July 31, 2017, the defendant, VICTOR EVANS, JR. convinced VICTOR EVANS, SR., to withdraw $98,368.83 from his Marquette Bank checking account ending in 6387. The check was issued to VICTOR EVANS, JR. — not to a business or a business account.

41. On or about October 13, 2017, VICTOR EVANS, SR. wired from his personal Marquette Bank account ending in 6387 $21,175.00 to the ANTOINETTE MONIQUE HOPKINS' A.M. White Law Firm, PLLC's Bank of America account ending in 8878. The purpose of the wire transfer was a "BUSINESS PLAN AND FEASIBILITY STUDY FOR A PROJECT."

42. On or about October 13, 2017, VICTOR EVANS, JR. convinced VICTOR EVANS, SR. to withdraw $50,000.00 from his Marquette Bank checking account ending in 6387 and to deposit that among into their joint Marquette Bank checking account ending in 5576, which was opened that same day. This gave VICTOR EVANS, JR. unlimited access to these funds.

43. From on or about October 23, 2017, to on or about December 18, 2017, VICTOR EVANS, JR. withdrew $10,000.00 from his joint Marquette Bank checking account ending in

11

5576 with VICTOR EVANS, SR. The checks were issued to VICTOR EVANS, JR. — not to a business or a business account. The purpose of the withdrawal was "salary."

44.     From on or about January 2, 2018, to on or about January 8, 2018, VICTOR EVANS, JR., withdrew $4,000.00 from his joint Marquette Bank checking account ending in 5576 with VICTOR EVANS, SR. The checks were issued to VICTOR EVANS, JR. — not to a business or a business account. The purpose of the withdrawal was "salary."

45.     On or about April 30, 2018, VICTOR EVANS, SR., wired from the Marquette Bank account ending in 5576, which was in the name of TERNION OF ENGLEWOOD Bank Account and was operated by VICTOR EVANS JR. and VICTOR EVANS, SR., $13,800.00 to TERNION GLOBALS's Truist Bank account ending in 4091. The purpose of the wire transfer was a "Pay Contractors." Account ending in 4091 was opened by NEIL JOHN HALVERSON on January 3, 2018, and on January 30, 2018, ANTOINETTE MONIQUE HOPKINS became a signor on the account.

46.     On or about April 3, 2019, VICTOR EVANS, SR., wired from the Marquette Bank account ending in 5576, which was in the name of TERNION OF ENGLEWOOD and was operated by VICTOR EVANS, JR. and VICTOR EVANS, SR., $15,000.00 to TERNION GLOBAL's Truist Bank account ending in 4091. The purpose of the wire transfer was for "FRANCHISE DUES." Account ending in 4091 was opened by NEIL JOHN HALVERSON on January 3, 2018, and on January 30, 2018, ANTOINETTE MONIQUE HOPKINS became a signor on the account.

47.     On or about April 3, 2019, to TERNION GLOBAL, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., convinced VICTOR EVANS, SR. to enter a

Roth IRA/ESA Plan Redemption Request with Waddell & Reed using VICTOR EVANS, SR.'s Marquette Bank account ending in 6387. As a result, on or about April 12, 2019, VICTOR EVANS, SR. engaged in a wire transfer of $300,000.00 from his Waddell & Reed Roth IRA account ending in 1017 to his Marquette Bank checking account ending in 6387.

48. On or about April 15, 2019, VICTOR EVANS, SR. wired from his personal Marquette Bank account ending in 6387 $285,000.00 to TERNION GLOBAL's Truist Bank account ending in 4091. The purpose of wire was listed as "Vocational School." Account ending in 4091 was opened by NEIL JOHN HALVERSON on January 3, 2018, and on January 30, 2018, ANTOINETTE MONIQUE HOPKINS became a signor on the account. This was the final payment by VICTOR EVANS, SR. to TERNION GLOBAL, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, , NEIL JOHN HALVORSON, and VICTOR EVANS, JR., as part of the aforementioned scheme to defraud. The abovementioned funds, as well as those referenced in paragraphs 38, 41, 45, and 47, were used by LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER,

NEIL JOHN HALVORSON, and VICTOR EVANS, JR., for personal expenses including, but not limited to, rent for residences and vacation travel. Indeed, soon after many of the aforementioned wire transfers, similarly sized wire transfers were made from the receiving account to other accounts of LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., where the funds were spent on personal expenses and expenses unrelated to TERNION GLOBAL. Additionally, financial advisors and employees of Waddell and Reed and Marquette Bank warned VICTOR EVANS, SR. that the abovementioned wire transfers were part of a scam and initially refused to execute the wire transfers.

13

49. On or about April 15, 2019, VICTOR EVANS, JR. convinced VICTOR EVANS, SR. to withdraw $15,000.00 from his Marquette Bank checking account ending in 6387 and to deposit that amount into their joint Marquette Bank checking account ending in 5576. This gave VICTOR EVANS, JR. unlimited access to the funds.

50. From on or about April 25, 2019, to on or about July 8, 2019, VICTOR EVANS, JR. withdrew $8,000.00 from his joint Marquette Bank checking account ending in 5576 with VICTOR EVANS, SR. The checks were issued to VICTOR EVANS, JR. — not to a business or a business account. The purpose of the withdrawal was "consulting."

51. By May 2019, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., convinced VICTOR EVANS, SR., to wire transfer over $326,175.00 in total out of his Marquette Bank checking account ending in 6387. All these fraudulent wire transfers were received by TERNION GLOBAL, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR.

52. By May 2019, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR., had convinced VICTOR EVANS,SR., to wire transfer approximately $28,800.00 in total out of his and VICTOR EVANS, JR.' joint Marquette Bank checking account ending in 5576. All these fraudulent wire transfers were received by TERNION GLOBAL, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, NEIL JOHN HALVORSON, and VICTOR EVANS, JR.

53.   From 2020 through April 9, 2024, LENEL HOPKINS, ANTOINETTE MONIQUE HOPKINS, ALICHIA WEBSTER, ___ and NEIL JOHN HALVORSON have not contacted VICTOR EVANS, SR.   However, as of April 9, 2024, (1) TERNION OF ENGLEWOOD is still listed as an active "hub" or subsidiary of TERNION GLOBAL on TERNION GLOBAL's website; and (2) TERNION GLOBAL's address is still listed as 2 North Twentieth Street, Suite #1120, Birmingham, Alabama 35203 on TERNION GLOBAL's website despite the fact that TERNION GLOBAL does not occupy that location.

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

1.   Paragraphs 1-54 of the Introduction and Count 2 of this Indictment, are re-alleged and incorporated herein by reference.

2.   From on or about April 1, 2016, and continuing until on or about July 8, 2019, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**(1) TERNION GROUP INTERNATIONAL, LLC,
a/k/a TERNION TRAINING AND EDUCATION
CENTER, INC.**

**(2) LENEL HOPKINS,**

**(3) ANTOINETTE MONIQUE HOPKINS,**

**(4) ALICHIA WEBSTER,**

**(6) NEIL JOHN HALVORSON;**

and

**(7) VICTOR EVANS, JR.,**

15

defendants herein, did knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to commit the following offenses against the United States, namely, to knowingly execute a scheme and artifice to defraud VICTOR EVANS, SR., which affected federally insured financial institutions, based on false and fraudulent pretenses, representations, and promises, by means of interstate wire and radio communications and communication facilities in interstate commerce, in violation of Title 18, United States Code, Section 1343.

3.  In furtherance of the conspiracy, and to achieve its objects, the defendants committed the overt acts alleged in Paragraphs 1-54 and Counts and 2 of this Indictment.

**All in violation of Title 18, United States Code, Sections 1349 and 1343.**

### COUNT TWO

### (Wire Fraud)

On or about April 15, 2019, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**(1) TERNION GROUP INTERNATIONAL, LLC,
a/k/a TERNION TRAINING AND EDUCATION
CENTER, INC.**

**(2) LENEL HOPKINS,**

**(3) ANTOINETTE MONIQUE HOPKINS,**

**(4) ALICHIA WEBSTER,**

**(6) NEIL JOHN HALVORSON;**

and

16

**(7) VICTOR EVANS, JR.,**

defendants herein, in the counts below, aiding and abetting each other and others known and unknown to the Grand Jury, with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent manner, the below-described scheme and artifice to defraud VICTOR EVANS, SR., by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud, the defendants knowingly used interstate wire and radio communications and communication facilities in interstate commerce, which affected federally insured financial institutions, by causing to be withdrawn from the Marquette Bank account ending in 6387 in the name of VICTOR EVANS, SR., the amount of $285,000.00 and deposited into the Truist (BB&T) Bank Account ending in 4091 which was in the name of TERNION GROUP INTERNATIONAL.

**In violation of Title 18, United States Code, Section 1343 and 2.**

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(2))

Pursuant to Title 18, United States Code, Section 982(a)(2), the United States gives notice to the Defendants,

### (1) TERNION GROUP INTERNATIONAL, LLC, a/k/a TERNION TRAINING AND EDUCATION CENTER, INC.

### (2) LENEL HOPKINS,

### (3) ANTOINETTE MONIQUE HOPKINS,

### (4) ALICHIA WEBSTER,

...

### (6) NEIL JOHN HALVORSON;

and

### (7) VICTOR EVANS, JR.,

that in the event of conviction of the offense charged in Counts 1-2 of this Indictment, the United States intends to seek forfeiture of all property constituting or derived from proceeds obtained, directly or indirectly, as the result of such offense.

## NOTICE OF CRIMINAL FORFEITURE
## (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to the Defendants,

**(1) TERNION GROUP INTERNATIONAL, LLC,
a/k/a TERNION TRAINING AND EDUCATION
CENTER, INC.**

**(2) LENEL HOPKINS,**

**(3) ANTOINETTE MONIQUE HOPKINS,**

**(4) ALICHIA WEBSTER,**

**(6) NEIL JOHN HALVORSON;**

**and**

**(7) VICTOR EVANS, JR.,**

that in the event of conviction of the offenses charged in Counts 1-2 of this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## Money Judgment and Substitute Assets

The United States gives notice that it will seek a money judgment against each Defendant. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of each Defendant up to the amount of the money judgment against that Defendant.

A TRUE BILL:

**Original Signature on File**
FOREPERSON OF THE GRAND JURY

ALAMDAR S. HAMDANI
United States Attorney, Southern District of Texas

*Adam Goldman*
Adam Goldman
Assistant United States Attorney